IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| 54 REALTY, LTD., *et al.*, | : | |
| | : | Case No. 1:18-cv-471 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER ADOPTING REPORT AND** |
| LANCE HIMES, *et al.*, | : | **RECOMMENDATION** |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on the Magistrate Judge's Report and Recommendation that the Court stay this matter pending the outcome of the state court (Doc. 30). Plaintiffs filed objections (Doc. 32)[1] to which Defendants responded (Doc. 33). For the reasons set forth below, the Court will overrule the Plaintiffs' objections and adopt the Magistrate Judge's Report and Recommendation.

### I.     BACKGROUND

The Plaintiff companies all own or operate nursing homes in Ohio. (Amended Complaint, Doc. 16 at PageID 179–82.) Plaintiff Harold Sosna owns in whole or in significant part all of the Plaintiff companies. (*Id.* at PageID 182.)

In 1998, Plaintiff Sosna and a partner[2] formed Plaintiff 72 Ventures, which purchased an existing nursing home, Bryden Place, in Columbus, Ohio. (*Id.* at PageID 195.) Bryden Place[3] housed people struggling with addiction and mental illness, and several residents were registered

---

[1] The Court refers Plaintiffs' Counsel to section I(E)(3)(c) of the Court's Standing Order on Civil Procedures requiring use of CM/ECF document numbers and PageID numbers for citations to the record. The Court will consider Plaintiffs' Objections (Doc. 32) even though they do not comply with the Court's Standing Order. However, future filings may be stricken for lack of compliance.
[2] The partner is not a party to this action.
[3] Bryden Place is not a party to this action.

sex offenders. (*Id.* at 195.) Although Sosna and his partner were experienced owners of traditional nursing homes for elderly and infirm residents, neither Sosna nor his partner "had any expertise in operating a home that could serve the special needs of the Bryden Place residents." (*Id.* at PageID 195, ¶ 68.) Accordingly, they leased Bryden Place to other companies who operated it. (*Id.* at PageID 195–96.)

According to Plaintiffs, former Ohio Governor John Kasich and the Ohio Department of Health[4] began a "war on nursing homes" in 2011. (Plaintiffs' Objections, Doc. 32 at PageID 602–04; Doc. 16 at PageID 189–92.) As a result, many facilities specializing in caring for non-traditional populations—including registered sex offenders and people with behavioral issues, mental health problems, and addiction concerns—were ultimately closed. (Doc. 16 at PageID 196–98.)

Bryden Place accepted a number of residents displaced from the closed nursing homes, including a large number of sex offenders. (*Id.* at PageID 198.) In early 2017, the Department of Health began inspecting Bryden Place "with increased frequency" that was "unprecedented." (*Id.* at PageID 198–99, ¶ 83.) Plaintiffs allege that the Department of Health exaggerated resident complaints against Bryden Place, credited absurd complaints by confused residents, and refused to revisit Bryden Place to confirm that any deficiencies had been abated. (*Id.* at PageID 199–213.)

On July 21, 2017, the company with which Plaintiff Sosna and his partner contracted to operate Bryden Place[5] "received a hand-delivered notice from the Ohio Department of Health proposing to terminate Bryden Place's nursing home license." (*Id.* at PageID 214, ¶ 115.)

---

[4] Defendants in this case include the Director of the Ohio Department of Health, the Director of the Ohio Department of Aging, and several Health Care Facilities Surveyors from the Ohio Department of Health. (Doc. 16 at PageID 182–85.)
[5] The company, Embassy Healthcare, is not a party to this action.

According to Plaintiffs, Defendants closed other facilities housing non-traditional residents "and sent more troubled residents to Bryden Place [and] [t]hen they used the problems of this populace as a pretext for closing Bryden." (Doc. 16 at PageID 215, ¶ 118.) Plaintiff 72 Ventures—of which Plaintiff Sosna owns 50 percent—owned Bryden Place at the time its license was revoked. (*Id.* at PageID 179, ¶ 7 and PageID 182, ¶ 19.)

Under Ohio law, a nursing home owner must obtain a Certificate of Need ("CON") from the Ohio Department of Health ("ODH") before developing a new long-term care facility, replacing an existing long-term care facility, performing large scale renovation of an existing long-term care facility, or increasing the capacity of a long-term care facility. *See* Ohio Rev. Code § 3702.51, *et seq.* However, the ODH Director must deny a CON application if, "[d]uring the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 of the Revised Code for . . . a nursing home owned or operated by the applicant or a principal participant." Ohio Rev. Code § 3702.59(B)(1)(b). "Principal participant" includes "[a] person who has an ownership or controlling interest of at least five percent in an applicant, in a long-term care facility that is the subject of an application for a certificate of need, or in the owner or operator of the applicant or such a facility." Ohio Rev. Code § 3702.51(R)(1).

Plaintiff Sosna created Plaintiff Avery Road Realty LLC ("Avery") to acquire 115 long-term care beds from one of the now-closed nursing homes. (Doc. 32 at PageID 608.) Avery submitted an application for a CON to build a new facility and relocate the purchased beds to the new facility, but the ODH denied the application on December 22, 2017. Avery appealed the CON application denial, and the initial Hearing Examiner agreed with Avery. (Hearing Examiner's Report and Recommendation, Doc. 26-2 at PageID 423.) However, the ODH upheld

the denial of Avery's CON. (Adjudication Order dated August 1, 2019, Doc. 33-1 at PageID 658.) Avery challenged the CON application denial, and that administrative appeal remains pending in the Ohio Court of Appeals for the Tenth District, Franklin County, Ohio, Case No. 19-AP-00539. (Doc. 33 at PageID 643.)

In this case, Plaintiff Sosna alleges that Defendants will not grant CON applications to him or to any of the companies he owns because Sosna owned 50 percent of 72 Ventures which owned 100 percent of Bryden Place at the time Bryden Place's license was revoked. (Doc. 16 at PageID 211.) Plaintiffs—Sosna and companies he owns—contend that the Ohio statutory scheme is unconstitutional and that Defendants are misapplying Ohio Revised Code § 3702.59(B)(1)(b) to illegally deprive them of Certificates of Need. (*Id.* at PageID 225–32.) In addition to monetary relief, Plaintiffs ask the Court to declare Ohio's Certificate of Need statutory scheme unconstitutional and enjoin the Ohio Department of Health (through the Defendants acting in their official capacities) from enforcing the sixty-month moratorium in Ohio Revised Code § 3702.59(B)(1)(b) against Plaintiff Sosna and his Plaintiff companies. (Doc. 16 at PageID 232–33.)

## II.  PROCEDURAL HISTORY

Plaintiffs initiated this action alleging that Defendants violated their constitutional rights to due process, equal protection, and 42 U.S.C. §§ 1983, 1985(3), and 1986. (*Id.* at PageID 225–32.) The Court referred this matter to United States Magistrate Judge Stephanie Bowman for initial consideration of all pretrial and post-judgment motions, pursuant to 28 U.S.C. § 636(b)(1) and (3). (Doc. 2.) Defendants filed a Motion to Change Venue (Doc. 5) and a Motion to Dismiss (Doc. 8). Plaintiffs then filed an Amended Complaint (Doc. 15) and a Corrected Amended Complaint (Doc. 16). In response, Defendants filed a second Motion to Change

Venue (Doc. 19) and a second Motion to Dismiss (Doc. 23). In their second Motion to Dismiss, Defendants aver, among other things, that all Plaintiffs except Sosna and 72 Ventures lack standing, the Eleventh Amendment bars Plaintiffs' requested relief from Defendants in their official capacities, and the Court should abstain from deciding this case until the pending administrative appeal is complete. Plaintiffs oppose all of these motions.

On August 23, 2019, the Magistrate Judge issued a Report and Recommendation agreeing with Defendants that this matter should be stayed pending the outcome of Avery's administrative appeal pursuant to the *Younger*[6] abstention doctrine. (Doc. 30.) Plaintiffs filed Objections to the Magistrate Judge's Report and Recommendation (Doc. 32) to which Defendants responded (Doc. 33).

### III. *YOUNGER* ABSTENTION

Plaintiffs contend that *Younger* abstention does not apply here because the CON application denial is not the type of "quasi criminal" action to which *Younger* applies; that only Plaintiffs Avery and Sosna are currently involved in the state court proceedings; and that abstention is not proper here because the Ohio statute is "flagrantly unconstitutional" and Defendants have engaged in bad faith. The Court will address these arguments individually.

Generally, federal courts "are obliged to decide cases within the scope of federal jurisdiction." *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) (quoting *Sprint v. Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). However, pursuant to *Younger v. Harris*, 401 U.S. 37 (1972) and its progeny, a federal court must abstain from entertaining an action under certain exceptional circumstances where "allowing a federal suit to proceed threatens 'undue interference with state proceedings.'" *Aaron*, 914 F.3d at 1016 (quoting *Sprint*, 571 U.S.

---
[6] *Younger v. Harris*, 401 U.S. 37 (1972).

at 72)). The Supreme Court, in *New Orleans Public Services, Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350 (1989), delineated the following circumstances in which *Younger* abstention applies: (1) where there is an ongoing criminal prosecution; (2) "in certain civil enforcement proceedings" which "are akin to criminal prosecutions;" and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (quoting *Sprint*, 571 U.S. at 72 and *NOPSI*, 491 U.S. at 368). "In proceedings akin to a criminal prosecution, 'a state actor is routinely a party to the state proceeding and often initiates the action,' and the procedure is initiated to sanction the federal plaintiff." *Id.* (quoting *Sprint*, 571 U.S. at 79). Indeed, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79–80.

In the case at bar, Plaintiffs allege that various ODH officials not only investigated Bryden Place—a nursing home owned by Plaintiff 72 Ventures which is, in turn, 50 percent owned by Plaintiff Sosna—but, in fact, "targeted" Bryden Place by "inspecting Bryden Place with increased frequency" at a rate of review that was "unprecedented." (Amended Complaint, Doc. 16 at PageID 198–99, ¶¶ 82–83.) This alleged unprecedented investigation culminated in ODH's termination of Bryden Place's nursing home license. (*Id.* at 213–214.) Defendant Himes, as Director of ODH, signed the Notice of proposed termination, citing "real and present danger" at the site and "uncorrected violations." (*Id.* at PageID 214, ¶ 115.) Indeed, Plaintiffs allege that, even after the ODH revoked Bryden Place's license, ODH officials continued to allege violations of Ohio law against Bryden Place. (*Id.* at PageID 215, ¶ 120.)

Because Sosna had an ownership interest of more than 5 percent in Bryden Place, he became subject to the sixty-month moratorium on CON applications in Ohio Revised Code §

3702.59. (Doc. 33-1 at PageID 658.) Thus, when Sosna formed a new company, Avery, which sought a CON, ODH officials denied the CON application as part of the moratorium imposed on Sosna and his company because of Sosna's ownership interest in Bryden Place. (*Id.*) Sosna and Avery appealed the moratorium, and that administrative appeal is currently pending in the Ohio Court of Appeals for the Tenth District. In this action, Plaintiffs seek to enjoin the moratorium imposed, along with damages and a broader declaratory judgment of unconstitutionality. (Doc. 16 at PageID 232–233.) During the administrative appeal, the parties—represented by counsel—are entitled to file briefs, offer evidence, and make arguments. (*See* Doc. 33-1 and Ohio Rev. Code § 3702.60(B).) The Court concludes, then, that the pending state action is within the narrow category of civil enforcement proceedings akin to criminal prosecutions to which *Younger* abstention may apply.

Once the Court determines that a state proceeding falls into a *NOPSI* category in which *Younger* abstention may be proper, the Court must analyze the case using the three-factor test described in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *Aaron*, 914 F.3d at 1018. "If '(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims,' we may abstain from hearing the federal claim." *Id.* (quoting *Doe*, 860 F.3d at 369).

In the case at bar, the parties agree that the first two *Middlesex County* criteria are satisfied because state proceedings are currently pending and the State of Ohio has an important state interest in regulating nursing homes licensed by the ODH. (*See* Doc. 32 at PageID 617 and Doc. 33 at PageID 648.) As to the third criteria, Plaintiffs concede that the state proceedings provide Plaintiff Avery an adequate opportunity to raise his constitutional claims. (Doc. 32 at

7

PageID 617.) However, Plaintiffs aver that the other Plaintiffs are not parties to the pending state proceeding and, thus, lack an adequate opportunity to raise constitutional claims. (*Id.*) The Court disagrees.

The Plaintiffs in this case are Sosna and various companies in which Sosna has at least a 50 percent ownership interest. According to the Amended Complaint, the ODH has informed Sosna that the sixty-month moratorium imposed on him is the reason that all Plaintiffs are ineligible for CONs. (Doc. 16 at PageID 222, ¶ 135.) ("Department of Health refused to grant a Certificate of Need that would have allowed for Avery Road to be developed. . . It refused to permit a relocation of beds by Plaintiff 54 Realty to its Forest Hills Center. It has told Mr. Sosna that it will refuse to permit any relocation or acquisition of beds by any of his properties, or any substantial improvement of them, for a period of 5 years.") Thus, according to the Amended Complaint, the claims for all Plaintiffs in this action rise or fall on the moratorium imposed against Sosna for his ownership in Bryden Place. If Avery is successful in its state court appeal, that determination will apply to all Sosna-owned companies seeking a CON. Besides Sosna, every Plaintiff in this federal case is a Sosna-owned company. Accordingly, the Plaintiffs have an adequate opportunity to raise their constitutional claims in the state court proceeding, and *Younger* abstention is appropriate in this case.

As to Plaintiffs' remaining objections—that abstention is not proper here because the Ohio statute is "flagrantly unconstitutional" and the Defendants have engaged in bad faith—Plaintiffs failed to raise either contention before the Magistrate Judge. In addition, the Court finds these arguments unpersuasive.

To invoke the flagrant unconstitutionality exception, a statute must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph,

and in whatever manner and against whomever an effort might be made to apply it." *Doe*, 860 F.3d at 371 (quoting *Younger*, 401 U.S. at 53–54). Even if the statute were applied in an unconstitutional manner—and the Court makes no such finding here—"there must be facial unconstitutionality as well as in application." *Id.* Plaintiffs in this case fall short of reaching that very high bar.

As to the bad faith exception, the example contemplated in *Younger* "involved repeated threats by prosecutors designed to discourage individuals from asserting their constitutional rights. *Doe*, 860 F.3d at 371. No such allegations are made here. Indeed, the bad faith exception is "rarely applied" and "cases thus are exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court." *Kalniz v. Ohio State Dental Bd.*, 699 F.Supp.2d 966, 973 (S.D. Ohio 2010) (Marbley, J.) (quoting, in part, *Tindall v. Wayne Cty. Friend of the Court*, 269 F.3d 533, 539 (6th Cir. 2001)). In this case, the state proceedings are still pending in the Ohio Court of Appeals, and Plaintiffs Avery and Sosna can and should present any bad faith allegations in that forum first.

The Court concludes, then, that *Younger* abstention applies in this case. The matter will be stayed until the state proceedings are concluded. If Plaintiffs are not satisfied that the state courts have protected their constitutional rights, they may resume this action at that time.

## IV. CONCLUSION

The Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* the filings in this matter as required by Rule 72(b)(3) of the Federal Rules of Civil Procedure. Upon consideration of the foregoing, the Court **OVERRULES** Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation. Accordingly, Defendants'

request for *Younger* abstention is hereby **GRANTED**. This matter is stayed pending the outcome of Plaintiff Avery's state court appeal in Case No. 19-AP-00539. All pending motions are **DENIED AS MOOT**.

    **IT IS SO ORDERED**.

Dated: 9/26/19                          S/Susan J. Dlott_____
                                              Judge Susan J. Dlott
                                              United States District Court